UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **RICHARD BOLDUC** | Case No.   6:20-cv-2279 |
| 316 Perfect Dr. | |
| Daytona Beach, FL  32124 | Judge |
| | |
| Plaintiff | |
| vs. | |
| | |
| **CHARTER COMMUNICATIONS, INC.** | |
| 2251 Lucien Way | **COMPLAINT WITH JURY DEMAND** |
| Maitland, FL  32751 | |
| c/o Statutory Agent | |
| Corporation Service Company | |
| 1201 Hays St. | |
| Tallahassee, FL  32301 | |
| | |
| Defendant | |

## JURISDICTION

1. This Court has jurisdiction of this case under 28 USCS §1331, as the case raises a federal question under 42 USCS 200(e) et.seq, the Civil Rights Act of 1964 as amended, 29 USCS §621 et. Seq., the Age Discrimination Act of 1967 as Amended, and 29 U.S.C.A. § 2617, the Family Medical Leave Act.  This is a mixed motive case.

## PARTIES

2. Plaintiff Richard Bolduc is a male Citizen of the United States and a resident of the State of Florida, aged 59 residing at the address mentioned in the caption.

3. Defendant Charter Communications is foreign corporation with an office in Maitland, Florida as noted in the caption, and is served through its statutory agent.

## FACTS

4. Plaintiff Bolduc began his career with Charter Communications on March 29, 2007, when he accepted a position with Bright House Networks as a Finance Manager.

5. However, Bolduc actually started in the business at the age of 16, in 1977, with GTE Telephone Company.

6. Plaintiff Bolduc has held numerous positions in the industry including Fiber Optic Engineer, Wireless Services Engineer, Customer Services Manager, Manager of Marketing and Business Planning, Acting Marketing Director, Manager of Revenue Development and Pricing, Financial Analyst, Senior Finance Manager, Acting Finance Director, Pricing and Planning Analyst, and Pricing and Planning Manager.

7. Plaintiff Bolduc has an Associate's Degree in Applied Science in Electronics Technology, a Bachelor of Science in Engineering Technology (1987) (GPA 3.84) and a Master of Business Administration (1991)(GPA 3.97).

8. At Defendant's Company (and at the predecessor companies which Charter bought), Plaintiff Bolduc's annual performance reviews continuously exceeded expectations and he worked as a Senior Finance Manager until he relocated to Cincinnati.

9. In 2014, Ric's wife, Laura Bolduc, accepted a Vice President position with the University of Cincinnati Foundation, but Ric continued to work for Bright House Networks until he relocated to Cincinnati in April 2014 to support his wife in her new role.

10. Plaintiff Bolduc was hired by the Time Warner Cable Media as a Pricing and Planning Manager (PPM) in February 2015, and worked for the Blue Ash, Ohio office in greater Cincinnati.

11. In May 2016, the merger between Bright House Networks, Time Warner Cable, and Charter Communications was finalized.  The three companies combined as Charter/Spectrum.

12. About this time, Ric and Laura began to relocate to the Florida area. Ric informed his manager that he was looking for PPM (Pricing, Planning Manager) or PPI (Pricing, Planning, and Inventory) positions.

13. Around this timeframe, PPI Management also announced it would be hiring four PPMs for the Florida area, two in the next nine months. Bolduc reiterated to his manager his desire to relocate to Florida as a PPM, and applied for both PPM positions located in the St. Petersburg office and also for the two located in the Maitland office. In March 2017, Laura relocated to the Daytona Beach area. Over the next few months Ric continually applied for all four PPM positions along with other job opportunities.

14. Although he was highly qualified, he was turned down, ostensibly because other applicants' qualifications "more closely matched the needs" for the positions.

15. Finally, in June 2017, Bolduc's manager indicated that he could take the position of Pricing Planning Analyst (PPA) (a level below his current position) and relocate to Florida.

16. Bolduc accepted, took a $5,000 relocation sum, and continued to apply for the open PPM positions. He reported to the St. Petersburg office in September 2017. He again applied for all four open PPM positions, for which he was eminently qualified, as it was the same job he had been doing with exemplary reviews in Cincinnati, but he was again turned down.

17. The hiring manager, Courtney Baker, a far younger person than Plaintiff, filled the PPM positions with younger applicants than Plaintiff who were far less qualified than Plaintiff. None of the hires had done PPM work in the past.

18. In December 2017, Plaintiff and his wife Laura purchased a home in Daytona Beach. At that time, Plaintiff Bolduc visited Laura on weekends and commuted to St. Petersburg during the week, staying at his parent's condominium in Gulfport. Plaintiff Bolduc continued to work out

of the Spectrum St. Petersburg office until March 2018, when his reporting location was changed to the Spectrum office in Maitland, Florida, where he could commute daily from Daytona Beach.

19. In the fall of 2017, Rick was informed by his manager that he was assuming responsibilities focusing on "all things sports". He received no change in job title or increase in pay, but did get considerable praise from his managers and peers for his efforts in what amounted to a new position.

20. After a year of doing well at these new responsibilities, Plaintiff Bolduc's manager informed him that his current responsibilities focusing on "all things sports" were being taken away and assumed by a sales manager, a female, Madison, in her 20s, beginning January 2019. Ric Bolduc was told his new job would be to help out the Tampa PPI team with working orders, and also to train Madison in her new role.

21. After Plaintiff Bolduc was informed of this change in responsibility, senior managers announced at a Spectrum All Hands Meeting that Madison would be the new sports manager, an announcement that was somewhat embarrassing to Ric, given his superb performance in that position, a position in which he had continually received excellent performance reviews.

22. Although Plaintiff Bolduc continually received praise in emails from the younger Courtney Baker, she always favored younger workers and gave Ric mediocre performance reviews designed to keep him from being promoted. Her performance review, coming after effusive praise in emails, and inconsistent with his performance and her oral notes on her performance, appeared designed to keep the Senior PPI manager positions in younger hands.

23. In early 2019, Laura Bolduc was diagnosed with a heart condition that eventually required an aortic valve replacement, and she was also diagnosed with adult onset muscular dystrophy. These conditions required frequent doctor visits and considerable home support. Ric applied for,

and was approved for, Intermittent Family Medical Leave Act (FMLA) on April 16, 2019. There was a tentative approval on April 19, 2019, an official final approval on June 6, 2019 for the period April 22, 2019, through October 21, 2019. Courtney Baker, during this time frame, became noticeably more distant and frequently would not return calls or answer emails.

24. Plaintiff Bolduc continually kept his manager and Charter Human Resources aware of Laura's health concerns, and copied them on all FMLA correspondence and approvals. On May 23, 2019, Charter Human Resources told him he should apply for continuous FMLA to prepare for Laura's heart surgery and recovery period. Plaintiff Bolduc did so on July 1, 2019, for the period July 23, 2019 through September 8, 2019. This continuous FMLA was approved on July 11, 2019. Unfortunately, Laura's heart condition continued to worsen. Surgery was scheduled for July 23, 2019. Ric was out on continuous FMLA from July 23, 2019, through August 23, 2019.

25. On June 27, 2019, in the midst his intermittent FMLA period, The Department announced a reorganization. During this meeting, it was announced the total headcount of the department would remain the same after the reorganization but that PPA Analysts, Ric Bolduc's position, was being eliminated and regional PPI Manager positions were being created. It was announced that PPMs would have to reapply for their current positions, and any new newly created positions. PPAs were told to apply for any PPI positions they were interested in, and any other open positions.

26. This supposed "reorganization" actually affected very few people indeed, as almost everyone was rehired, with the exception of Ric Bolduc, who was more highly qualified than almost any other for the PPI Management positions, as he had successfully occupied such a position previously.

27. Plaintiff Bolduc applied for the positions as Regional PPI Manager, all four PPI Managers, and a financial analyst position.  He interviewed for the above PPI positions on July 10, 2019, but received rejection notices for all 5 positions.  Each rejection stated that "there are other applicants whose qualifications more closely match our needs for this position", a shaky proposition indeed given the comparative qualifications and experience of those persons who were hired.

28.   During the period that Plaintiff Bolduc was out on extended FMLA leave, his manager announced that one of the current Maitland PPIs, Matt Doyle, 42, was being promoted to Regional PPI Manager position.  It was also decided that Jeremy Deweney, in his mid 40s, would retain his current role as PPI manager working for the Maitland office.  A PPA transition meeting was held by Charter Human Resources on September 11, 2019.  Official layoffs were announced beginning October 25, 2019 with all those affected remaining on payroll until November 1, 2019 to carry health benefits through the month of November.

29.  PPI Management was not present at this meeting announcing the layoffs, and Plaintiff Bolduc was not contacted by any PPI Management regarding his termination until he received an email telling him not to report to work prior to his official last day.

30.  The new Maitland PPI Manager was announced on October 4, 2019.  Two new St. Petersburg PPI Managers were announced later that month.  The new Maitland PPI Manager is Stacy Aronson, a female in her 40s.  She was a former account planner for Spectrum who has been with the company for less than 2 years and has no finance experience.  One of the new St. Petersburg PPI Managers is Elizabeth Fryer, a female in her 30s, and a former account planner, with no finance experience.  The second new St. Petersburg PPI Manager is Brande Vietto, in

her 30s, and new to Spectrum as her prior employment was with Triad as a media planner with no finance experience.

31. On October 7, 2019, Bolduc received an email from his manager, telling him there was no need to report to work after October 9, 2019, purportedly so he could have time to care for his wife Laura.

32. Plaintiff Bolduc continually applied for job opportunities outside Charter and also within Charter.  Although Ric was highly qualified for multiple PPI Manager positions, he was not selected for any of them, even though he has had excellent reviews and excellent work experience.  Almost every single person who was selected is a person younger, with less experience or no experience.  To Plaintiff Bolduc's knowledge, none of these persons has been using FMLA or intermittent FMLA.

33. Thus, it certainly appears, especially since he was on the cusp of getting some of these positions, until more inquiries were made to his home office, that his FMLA status played a role in his not being hired.

34. On February 14, 2020, Plaintiff Bolduc filed a charge of discrimination with the Equal Employment Opportunity Commission, said charge alleging violations of the Civil Rights Act of 1964 as Amended and the Age Discrimination in Employment Act of 1967, a true copy of such charge attached as Exhibit A and incorporated herein by reference.

35. On September 16, 2020, Plaintiff received a Right to Sue letter, a true copy of which is attached hereto as Exhibit B and attached hereto by reference.

**COUNT ONE:   VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED, 42 USCS 2000(e).**

36. Plaintiff realleges paragraphs 1-35 as if fully restated herein.

37. The conduct of Defendant in failing to hire, failing to promote, and tampering with Plaintiff's performance reviews to prefer younger employees and in other ways, was a violation of the Civil Rights Act of 1964 As Amended, 42 USCS 2000(e)(*et. Seq*).

38. As a proximate result of the Defendant's violation of the Act, Plaintiff is entitled to back pay, front pay, and/or rehire, his attorney fees, emotional distress damages, and the costs of this action.

## COUNT TWO:   VIOLATION OF THE AGE DISCRIMINATION OF EMPLOYMENT ACT AS AMENDED 29 USCS §621 et. Seq.,

39.   Plaintiff realleges paragraphs 1-35 as if fully restated herein.

40. The conduct of Defendant in failing to hire, failing to promote, and tampering with Plaintiff's performance reviews to prefer younger employees and in other ways, was a violation of the Age Discrimination of Employment Act  As Amended, 29 USCS §621 et. Seq.,

41. As a proximate result of the Defendant's violation of the Act, Plaintiff is entitled to back pay, front pay, and/or rehire, his attorney fees, emotional distress damages, and the costs of this action.

## COUNT THREE:  RETALIATION FOR USING THE FAMILY MEDICAL LEAVE ACT IN VIOLATION, 29 U.S.C.A. § 2617

42.   Plaintiff realleges paragraphs 1-35 as if fully restated herein.

43. The conduct of defendant in failing to hire, failing to promote, and tampering with Plaintiff's performance reviews to prefer younger employees and in other ways, was retaliation in violation of the Family Medical Leave Act, 29 U.S.C.A. § 2617.

44. As a proximate result of the Defendant's violation of the Act, Plaintiff is entitled to back pay, front pay, and/or rehire, his attorney fees, emotional distress damages, and the costs of this action.

## PRAYER FOR RELIEF

Wherefore, having fully pleaded his cause, Plaintiff Richard Bolduc prays that this Honorable Court award him from Defendant, on Counts One, Two, and Three, back pay, front pay and/or rehire, emotional distress damages, his reasonable attorney fees and costs in this action, and any and other such relief as this Court, or a Jury, may direct.

## JURY DEMAND

Plaintiff hereby demands trial by jury to decide all claims triable to a jury.

Respectfully submitted,

*/s/ Robert F. Croskery*
Robert F. Croskery, Esq.
Fla. Bar Number 19936
3905 Eastern Avenue, Suite 200
Cincinnati, OH  45226
Ph. 513.232.5297
Fax:  513.426.7372
rcroskery@croskerylaw.com